**IN THE UNITED STATES COURT FOR THE EASTERN DISTRICT OF VIRGINIA, NEWPORT NEWS DIVISION**

**GABRIELLE CARSON**
       **Plaintiff,**

                                                                        **Case No:**

**v.**

**I'M FRIEDA'S BOSS, LLC**                    **COMPLAINT AND JURY DEMANDED**
**D/B/A AQUA VISTA APARTMENTS**

**and**

**TM ASSOCIATES MANAGEMENT, INC.**
       **Defendants.**

## INTRODUCTION

1.  Since 2013, I'm Frieda's Boss, LLC ("I'm Frieda's Boss") doing business as Aqua Vista

    Apartments ("Aqua Vista"), has relocated Gabrielle Carson and her children to three different

    federally subsidized apartments within the complex because of unrelenting flooding, water leaks,

    collapsed ceilings, mold and vermin infestations.

2.  While Ms. Carson currently resides at 666 Aqua Vista Dr., Unit A, Newport News, Virginia

    23607 ("Unit 666A") with her six children, her home is uninhabitable. Within the last year, Ms.

    Carson has had to rush her son to the hospital on multiple occasions because he could not breathe

    due to asthma triggered by mold inhalation.  When it rains, water seeps into her home through

    the floor, walls, and windows destroying her personal property and providing a constant damp

    environment.  Water leaks from her refrigerator and forms persistent puddles in her kitchen,

    water pools in the kitchen cabinet beneath her sink where roaches now roam, and visible mold

    forms on walls throughout her home including in the bedrooms and kitchen.  Water has poured

    through bathroom ceilings on Ms. Carson and her children, causing the ceiling to cave in.

During the day, roaches crawl on her walls and surfaces, and at night, when Ms. Carson and her children sleep in the home, vermin have bitten them.

3.  Ms. Carson's home is not free from health and safety hazards as the law and her lease requires. Instead, her home is full of hazards that endanger the health and safety of her and her children, and that Aqua Vista and TM Associates Management, Inc. ("TM Associates") refuse to remedy. At best, Aqua Vista and TM Associates engage in negligent and dangerous patchwork repairs. At worst, they willfully ignore their obligations to maintain the apartment in compliance with the Virginia Residential Landlord Tenant Act, the Virginia Uniform Statewide Building Code (specifically the Virginia Maintenance Code), and the U.S. Department of Housing and Urban Development's ("HUD") regulations. As a result, Ms. Carson is now seeking a mandatory injunction, specific performance, and damages.

## PARTIES

4.  Ms. Carson is a low-income single mother who does not have the financial ability to rent an apartment from a private landlord. She has lived at Aqua Vista with her children, one of whom is disabled, since April 2013, and she has lived in her current apartment, Unit 666A, since on or about February 1, 2019. Ms. Carson is a resident of Virginia.

5.  I'm Frieda's Boss, LLC is a for-profit California limited liability company that owns Aqua Vista Apartments. Aqua Vista Apartments is an affordable housing complex in Newport News, Virginia that has a HUD Section 8 subsidy and receives housing assistance payments for 149 out of 150 apartments (including Unit 666A). I'm Frieda's Boss maintains its principal place of business in California where it is domiciled and where its members and/or officers conduct business.

6. TM Associates Management, Inc. is a Maryland corporation that manages Aqua Vista Apartments and has several employees working on-site at Aqua Vista providing property management services, including maintenance services. TM Associates maintains its principal place of business in Maryland where it is domiciled and where its officers conduct business. Upon information and belief, TM Associates took over property management at Aqua Vista in the fall of 2019.

## JURISDICTION AND VENUE

7. Jurisdiction over this action arises under diversity jurisdiction pursuant 28 U.S.C. § 1332 because Ms. Carson is a citizen of Virginia, I'm Frieda's Boss is a citizen of California, and TM Associates is a citizen of Maryland.

8. The amount in controversy exceeds $75,000 when combining Ms. Carson's personal property loss, physical injuries, mental anguish and emotional suffering, and the value of the injunctive relief requested.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) because the events or omissions giving rise to the claims herein occurred in this district, and the property at issue is situated in this judicial district.

## FACTS

### Health and Safety Hazards Plague Unit 662F

10. Ms. Carson and her children lived in Unit 662F at Aqua Vista from the summer of 2016 until about the end of 2018 or early 2019. However, that unit was plagued by multiple health and safety hazards from the start, prompting Ms. Carson to make multiple repair requests including, but not limited to, the following:

a.      fix the lack of air conditioning;

b.      fix a leaking refrigerator that pooled water onto the kitchen floor;

c.      fix holes in the drywall due to water intrusion;

d.      stop water leaking from the ceiling;

e.      fix water leaks from the kitchen sink and toilet;

f.      stop the water intrusion into the apartment that happened during heavy rain and resulted in water pooling in the various bedrooms;

g.      address the presence of numerous roaches;

h.      remediate the mold that could be seen and smelled throughout the apartment;

i.      fix the lack of heat; and,

j.      stop the smell of gas that consistently came from the use of the stove.

A copy of Work Order Nos. 19122, 19426, 20518, 20814, 21158, 21161, 21360, 21843, 21990, 24763, 25440, 30364, 30941, 33660, 39448, 40414, 41185, 42225, 43198, 43726, 43727, 45008, 46725, 46727, 54090, and 55385 are attached and incorporated herein as Plaintiff's Exhibits 1-26, respectively.

11.  While Aqua Vista's maintenance staff made numerous shoddy repair attempts, the health and safety hazards persisted.  Ms. Carson and her children began to suffer detrimental health effects and their pleas for adequate repairs fell on deaf ears at the Aqua Vista property management office.  In or around October 2016, Ms. Carson contacted Navigate Affordable Housing Partners, the Contract Administrator for Aqua Vista's subsidized Housing Assistance Payment Contract, in an attempt to compel Aqua Vista to properly address the multiple health and safety issues.

12.  Ms. Carson sent Christine Bishop, a Resident Complaint Specialist with Navigate Affordable Housing Partners, a video of her living conditions, and explained the pervasiveness of the

problem to Ms. Bishop when she said, "it's not just me Mrs. Christine It's a lot of older people and majority of the top units 88 percent is like this..I have kids with asthma and a new born idk what to do but I don't wanna get put out I wouldn't have no where to go..I moved here to Forster care then I had my own place every since 2007..but I wanna thank you so much for being a voice for me." A copy of an email dated October 13, 2016 from Gabrielle Carson to Christine Bishop is attached and incorporated herein as Exhibit 27.

13. Upon information and belief, Christine Bishop relayed Ms. Carson's health and safety concerns to Aqua Vista. A copy of an email from Christine Bishop to Gabrielle Carson is attached and incorporated herein as Exhibit 28.

14. On or around October 20, 2016, Ms. Carson further notified Christine Bishop that Aqua Vista had offered her another apartment prior to her agreeing to move into 662F Unit, "but the lady who just moved from there a week in a half ago seen Mr looking through the window and she USE'T to live there and I told her they wanna move me in there she said don't take it and another lady across hall from the unit was explaining that it was strong mold and her apartment is having problems with mold and the flooding." A copy of an email dated October 20, 2016 from Ms. Carson to Christine Bishop is attached and incorporated herein as Plaintiff's Exhibit 29.

15. After dealing with years of flooding, leaking, mold and vermin in Unit 662F, Aqua Vista finally agreed to move Ms. Carson and her children to another unit.  In a letter dated November 30, 2018, Aqua Vista notified Ms. Carson that her request for a new unit had been approved, and the letter references a report prepared by Commonwealth Environmental Solutions, LLC.  A copy of the November 30, 2018 letter is attached and incorporated herein as Exhibit 30.  Upon information and belief, the Commonwealth Environmental Solutions report confirmed the presence of mold in the unit. By then Ms. Carson had notified Aqua Vista on multiple occasions

that she and her children needed an apartment free from the flooding, leaks and mold which had significantly impacted the health of her and her children, as well as forced her to throw out a significant amount of furniture, clothing and other personal property that had been damaged by water and mold.

<u>Aqua Vista Apartments knows Water Intrusion, Mold, and Pests are Present in 666A</u>

16.   On or around the end of 2018 or the beginning of 2019, the Aqua Vista Office Manager, Michelle Wade, and the Assistant Manager, Logan Moore, represented to Ms. Carson that Unit 666A was available and free of the health and safety hazards identified above in paragraph 10, including but not limited to, water intrusion, pest infestations, and mold.

17.   However, Ms. Wade and Ms. Moore's representations were false.

18.   Aqua Vista knew that Unit 666A, a subterranean apartment, presented many of the same health and safety hazards present in Unit 662F, including mold, water intrusion, leaks, and a pest infestation.  Indeed, the City of Newport News Department of Codes Compliance sent Aqua Vista written notice on June 22, 2018 that Unit 666A was not in compliance with the Virginia Uniform Statewide Building Code because of the following:

a.         the drain pipes were not installed properly to prevent leaks outside of 666A;

b.         the apartment was not free of a rodent and roach infestation;

c.         the mechanical and electrical facilities were not maintained;

d.         the sanitation drainage system was not clear of all back ups; and,

e.         the interior surfaces were not maintained as indicated by a hole in the bathroom wall.

A copy of the letters with Reference PM-2018-0474 and Reference PM-2018-0475 dated June 22, 2018 are attached and incorporated herein as Plaintiff's Exhibits 31-32, respectively.

19.  Upon information and belief, previous tenants of Unit 666A reported mold, water intrusion, and pest infestations to Aqua Vista, but Aqua Vista failed to eliminate these health and safety hazards.

20.  Additionally, residents of other subterranean units at the Aqua Vista Apartments, also known as basement units by residents, have continuously experienced and reported mold, water intrusion, and pest infestations.

21.  Despite knowing of Ms. Carson's habitability concerns based on the condition of her two prior apartments, 662F and 680F, her prior work orders as described in paragraph 10, her in-person requests and phone calls for repairs, and notices from the City of Newport News Department of Codes Compliance, Aqua Vista knowingly and intentionally misrepresented the physical condition of 666A to Ms. Carson in order to induce her to sign the subsidized lease agreement for Unit 666A on or about February 1, 2019 at Aqua Vista Apartment's management office located at 646 Aqua Vista Dr., Newport News, Virginia 23607.

22.  Pled in the alternative, Aqua Vista deliberately failed to disclose the presence of a rodent/insect infestation, mechanical and electrical malfunctions, sanitation drainage system malfunctions, and water leaks and intrusions that were present in Unit 666A to Ms. Carson on or about February 1, 2019 when she signed the lease for that unit.

23.  Based on the misrepresentations and/or omissions regarding the physical condition of Unit 666A, Ms. Carson entered into the lease agreement for Unit 666A. A copy of the subsidized lease agreement is attached and incorporated herein as Plaintiff's Exhibit 33.

## Ms. Carson Discovers Water Intrusion, Mold, and a Pest Infestation in Unit 666A

24.  Soon after signing the lease Ms. Carson reported red markings on her tile floors, dead roaches, no heat in the apartment, and other maintenance concerns to Aqua Vista Apartments. A copy of Work Order No. 58871 is attached and incorporated herein as Plaintiff's Exhibit 34.

25.  In hindsight, Ms. Carson believes the red marks on her tile floors were due to the water that seeps through the floor of the apartment when it rains.

26.  Though Aqua Vista represented to Ms. Carson it repaired the issues identified in Work Order No. 58871, and eliminated the roach infestation, water continued to penetrate the floor and walls of Unit 666A and Ms. Carson started seeing more dead and living roaches in Unit 666A.

27.  Throughout April and May 2019, Ms. Carson reported by phone to Aqua Vista that water flooded through the floors, seeped through the walls, and destroyed her furniture, clothes, and other personal property when it rained.

28.  When Ms. Carson reported this flooding into her home by phone, Aqua Vista failed to return her phone calls, so she reported the flooding again in person to the Office Manager and Assistant Office Manager.

29.  Despite Ms. Carson's reports of flooding, Aqua Vista's employees and agents did not always, if ever, document the flooding in Unit 666A in written work orders as they did other repairs Ms. Carson reported.

30.  As the flooding in Unit 666A persisted without repair by Aqua Vista, Ms. Carson saw more roaches in her home and more roach and rodent droppings during the months of April and May 2019.

31.  Aqua Vista treated Unit 666A for pests periodically, but Aqua Vista's repair attempt did not eliminate the presence of roaches and rodents in Unit 666A.  As the weather warmed in June and

July 2019, Ms. Carson noticed a damp and moldy smell in Unit 666A, and that summer she reported the smell to the Management Office and requested that it hire a mold inspector to inspect Unit 666A for mold. Aqua Vista Apartments refused to hire a mold inspector, and instead merely sent maintenance staff to the apartment to spray visible mold with a bleach solution.

32.   Aqua Vista willfully refused to properly remediate the mold in Unit 666A even though it was already on notice that the constant water intrusion leading to the formation of visible mold and the persistent pest infestation in Unit 666A was similar to problems in other units that HUD had already flagged as Level 3 health and safety deficiencies at the complex.  Specifically, on January 22, 2019, HUD's Real Estate Assessment Center performed an inspection of 23 of the 149 subsidized units at Aqua Vista and found various health and safety deficiencies relating to water intrusion/mold and pest infestations.  A copy of the January 22, 2019 Physical Inspection Summary Report performed by HUD's Real Estate Assessment Center is attached and incorporated herein as Exhibit 35.  HUD found that Units 658A, 662E, 666D and 680E had Level 3 pest infestations that constituted health and safety deficiencies (Exh. 35, pp. 16, 17, 20, 27, 29, 30, 36.)  In addition, Units 654F and 666D had evidence of water intrusion that caused "mold or mildew greater to or equal to one square foot" which also constituted Level 3 health and safety deficiencies. (Exh. 35, pp. 15, 17, 26, 30.)

33.   On or about July 1, 2019, Ms. Carson reported the kitchen faucet was spraying and leaking water to Aqua Vista. A copy of Work Order No. 71550 is attached and incorporated herein as Plaintiff's Exhibit 36.

34.   While Aqua Vista represented  that maintenance repaired the kitchen faucet to Ms. Carson, it performed the repair in a negligent and reckless manner as Ms. Carson continued to experience leaks from her kitchen faucet beneath her cabinets and pests started to surround the leak.

35.  Worse yet, throughout the summer of 2019, water continued to intrude into the interior of 666A when it rained and Ms. Carson could feel the dampness from the rain on the walls of her apartment which caused them to buckle, crack, and form holes. While Ms. Carson continued to report these issues to Aqua Vista, the walls were not repaired timely and completely, and the water intrusion into the home was not eliminated.

36.  On or about August 14, 2019, Ms. Carson notified Aqua Vista that rain caused a hole to form in her children's bedroom and that the walls in her bedroom and the living room were damp, cracking, and caving in.

37.  Aqua Vista undertook repairs to eliminate the hole in the wall, but its repair attempt did not eliminate the water intrusion through the walls or the damp and moldy smell in Unit 666A. The hole in the wall eventually reformed as the wallboard continued to dampen, crack, and cave.  As a result of the constant water intrusion, mold and pests, Ms. Carson was yet again forced to throw away a significant amount of personal belongings and furniture, including but not limited to, beds and mattresses for her children.

38.  On or about September 12, 2019, Ms. Carson reported water leaking from her bathroom ceiling to Aqua Vista. A copy of Work Order No. 80410 is attached and incorporated herein as Plaintiff's Exhibit 37.

39.  While Aqua Vista attempted to repair her bathroom ceiling, maintenance staff performed the repair negligently and recklessly by only replacing the wallboard and inserting a vent instead of identifying the source of the water and eliminating the water leak. Aqua Vista represented to Ms. Carson it had repaired the bathroom ceiling and leak, however Ms. Carson later slipped on the floor and suffered injuries due to water leaking from the vent maintenance staff installed.

40.  As the leaks and water intrusion persisted throughout the summer of 2019 and fall of 2019, the presence of mice and roaches increased in Unit 666A as Ms. Carson noticed roaches atop the kitchen sink, atop kitchen surfaces, and around the walls of her bedroom during the day and night time. She also noticed mice holes in the walls.

41.  While Ms. Carson notified Aqua Vista of the pest infestation numerous times during this period, Aqua Vista occasionally undertook patchwork repairs, but failed to properly remedy the problem and the pests increased in number.

42.  Ms. Carson then spent approximately $100 every other month to treat her apartment for pests.

43.  Despite Ms. Carson's best efforts during the fall and winter of 2019, her home was becoming unbearable for her and her children as visible mold formed in the home, flooding continued, and the pests increased.

44.  By then Ms. Carson and all of her children were exhibiting symptoms of mold exposure and pest exposure, such as heavy coughing, swollen and itchy eyes, heavy breathing, itchy throats, persistent sneezing, running noses, headaches, discolored and itchy skin, rashes, skin peeling, and dizziness.  One of Ms. Carson's children, Hakeem, had been diagnosed with asthma that was bad enough to require multiple emergency visits to CHKD, as well as numerous hospitalizations. Ms. Carson also suffered from mental anguish, distress, and sleeplessness from worrying about the ongoing water intrusion, mold, pest infestation, and the condition of disrepair throughout her apartment and the corresponding negative impacts it had on the health of her and her children.

### Public Pleas for Help from Ms. Carson and Tenants Residing in Aqua Vista Apartments

45.  On or around January 14, 2020, Ms. Carson reported her kitchen sink backing up, gurgling when not in use, and leaking beneath her kitchen sink again. A copy of Work Order No. 93251 is attached and incorporated herein as Plaintiff's Exhibit 38.

46.  By January 2020, Ms. Carson and other tenants at Aqua Vista were exhausted and desperate after numerous requests for maintenance and repairs had been ignored, and they took their pleas to Newport News City Council on January 14, 2020.

47.  Ms. Carson spoke before Newport News City Council and stated the following:

a.      Aqua Vista Apartments failed to correct citations from City of Newport News Codes and Compliance;

b.      her children had been bitten by mice;

c.      her children cried when they went to school and came home from school because they did not want to stay in Unit 666A due to the conditions in the apartment;

d.      water and feces leaked from the ceiling; and,

e.      she felt no one heard her pleas for help.

A copy of Minutes from the January 14, 2020 Newport News City Council meeting is attached and incorporated herein as Plaintiff's Exhibit 39.

48.  A Newport News resident with grandchildren residing in Aqua Vista complained of "bacteria, rats, mold, and filth" at Aqua Vista Apartments.

49.  One resident of a basement apartment at Aqua Vista, reported that Aqua Vista refused to fix foundation issues that caused it to rain into apartments, leaks, falling ceilings, cracked paint, mold, and health problems for children. See Exhibit 39.

50.  Another tenant of Aqua Vista told Newport News City Council when she resided in a basement unit in the complex, "water came through the walls, the doors, and seeped from the floor" and she "lost everything." She also detailed reports of mold, insects, asbestos, sand in the water, leaky faucets, and walls and ceilings caving in unexpectedly to the Management Office, which

the employees and agents of Aqua Vista met with rudeness, outbursts, racism, discrimination, and sexual harassment. See Exhibit 39.

51.   Newport News City Council Members thanked the residents of Aqua Vista for speaking out, welcomed them to a back to school event, and told them the City did not turn a deaf ear on them. See Exhibit 39.

52.   After the Newport News City Council Meeting, on or about January 23, 2020, Ms. Carson and other tenants collectively demanded that Aqua Vista not only fix code violations noted by the City of Newport News Office of Codes Compliance, but also eliminate health and safety hazards such as visible mold, water intrusions, and pest infestations. Wavy TV 10, *Residents Protest Living Conditions at Aqua Vista Apartments in Newport News*, Wavy TV 10 YouTube, https://www.youtube.com/watch?v=xnB4e-CjGEA (last visited September 3, 2020).

53.   Instead of fixing the problems, the Aqua Vista Management Office locked its door, refused entry to residents, and called the City of Newport News Police Department.

54.   Between September 20, 2019 and January 30, 2020, the City of Newport News Department of Codes Compliance noted the following violations in 666A:

a.      interior surfaces not maintained;

b.      required clearances toward combustibles not maintained;

c.      fire detection system not maintained; and,

d.      hazardous electrical systems.

A copy of the letters with Reference PM-2019-0502, Reference PM-2020-0022, and Reference PM-2020-0096 are attached and incorporated herein as Plaintiff's Exhibit 40-42, respectively.

<u>Aqua Vista Apartments Feigns Ignorance of Mold, Water Intrusion, and Pests</u>

55. After Aqua Vista's multiple failed attempts to properly address the multitude of health and safety hazards in Unit 666A, on February 25, 2020, Ms. Carson, by counsel, sent a notice to Aqua Vista, addressed to TM Associates, and requested that Aqua Vista again repair leaks, eliminate the rodent and roach infestation, prevent water from intruding into the apartment, and remediate mold. A copy of the letter from counsel for Ms. Carson dated February 25, 2020 is attached and incorporated herein as Plaintiff's Exhibit 43.

56. James Andolina, an employee of TM Associates, responded to the letter by stating generally "items have already been repaired in her unit", a contractor would "repair any findings of the Newport News City Inspection", and that an exterminator performed an inspection of Unit 666A and "there were no infestation findings." A copy of Mr. Andolina's response dated February 25, 2020, is attached and incorporated herein as Plaintiff's Exhibit 44.

57. However, Mr. Andolina refused to acknowledge or address other issues in Ms. Carson's notice, not directly referenced in letters from Newport News Department of Codes Compliance, particularly visible mold, sewage and drainage problems, and persistent water intrusion into 666A.

58. By this time, mice and roaches were routinely biting and crawling on Ms. Carson and her children while they cried, tossed, and turned themselves to sleep at night with tissues stuffed in their ears to keep the roaches and other pests from crawling inside.

59. The next day, February 26, 2020, Mr. Andolina reversed course regarding the roach infestation after Terminix Commercial inspected 666A and notified him of the following:

a.     heavy German roach activity near the mechanical closet and kitchen;

b.     heavy German roach activity beside and behind the refrigerator;

c.     heavy German roach activity on the kitchen counters;

d.    German roach activity in and around the kitchen stove;

e.    heavy German roach activity on the kitchen floor; and,

f.    dead roaches, fecal droppings, and soiled areas.

A copy of the Terminix Commercial Letter dated February 26, 2020 is attached and incorporated herein as Plaintiff's Exhibit 45.

60.  While Aqua Vista attempted to address the infestation after this notice by applying insecticide, the pest problem in Unit 666A worsened because Aqua Vista failed to address the constant water intrusion and dampness in the apartment.

61.  On March 20, 2020, at the request of Ms. Carson's counsel, McKee Environmental, Inc., ("McKee Environmental") a company that provides environmental assessments of buildings, including mold assessments, performed a preliminary indoor environmental assessment of five units at Aqua Vista, including Unit 666A.  McKee Environmental inspected 666A and collected microbial samples. A copy of the McKee Environmental Preliminary Indoor Environmental Assessment ("McKee Report") is attached and incorporated herein as Plaintiff's Exhibit 46.

62.  McKee Environmental found visible mold in all five out of the five Aqua Vista Apartments it inspected and noted that "[t]he indoor environments of . . .666A are contaminated with the presence of very heavy amounts of several genera of actual mold growth  . . . actual mold growth is defined as a Condition 3 level of contamination, the highest contamination rating available by the standard."   McKee Environmental also noted the following specifically about Unit 666A:

a.    visible mold on the interior of the kitchen sink base cabinets, wallboard in the HVAC closet, and most supply air registers;

b.    mold odors;

c.    extreme water [damage] to interior finishes, furniture, and flooring;

d.      active water leaks around the refrigerator forming standing water;

e.      active water leak below the kitchen sink;

f.      missing tiles behind bathroom wall and soft wallboard in bathroom from water damage;

g.      bathroom sink cabinet water; and,

h.      a roach infestation.

63.   Counsel for Ms. Carson sent a copy of the McKee Report to counsel for Aqua Vista on June 5, 2020, noting "The report details significant mold in all units as confirmed by testing, as well as numerous pictures showing visible mold throughout each apartment.  As you know, we provided written notice to Aqua Vista several months ago of visible mold in each of these units (along with various other habitability issues), and have requested, among other things, that mold remediation be performed in accordance with professional standards."  A copy of that correspondence is attached hereto and incorporated as Plaintiff's Exhibit 47.

64.   Aqua Vista ignored the McKee Report and counsel's renewed request for repairs and mold remediation, and failed to eliminate the mold, water intrusion, and pest infestation in Unit 666A.

65.   By July 2020, Ms. Carson's home was simply unlivable and unsafe for her and her children as their health continued to deteriorate because of the conditions described in the McKee Report. As a result of Aqua Vista's refusal to remedy the numerous health and safety hazards in her unit, Ms. Carson and her children were forced to spend some days and nights away from the unit to preserve what they could of their physical and mental health.

66. Today, Ms. Carson is out of money having paid for hotel rooms and paid friends and family to allow her and her children to sleep in their homes in an effort to escape the mold and vermin, and she  does not know where she and her children will sleep next.

67.  Her physical and mental health have deteriorated because of Aqua Vista's willful and wanton failure to correct health and safety hazards, as evidenced by Ms. Carson's:

a.       mental anguish;

b.       difficulty breathing requiring hospitalization during and after pregnancy;

c.       falling on the floor in her bathroom due to water falling from her ceiling;

d.       prescriptions for medications;

e.       trips to the emergency room more than 20 times due to her son being unable to breath while in her home; and,

f.       fear and anxiety of homelessness and the potential loss of her children due to the health and safety hazards in her home.

### Count 1 – Negligent Repair Against I'm Frieda's Boss and TM Associates

68.  Plaintiff incorporates each paragraph as if alleged herein.

69.  Aqua Vista, via its agents and employees, undertook repairs to Unit 666A to eliminate mold, water intrusion, and pests, and it had a duty to perform the repairs in a reasonable manner.

70.  Aqua Vista failed to perform the repairs in a reasonable manner when it failed to treat mold in accordance with professional mold remediation standards, failed to address water intrusion and leaks by only replacing wallboards but not identifying and eliminating the source of water intrusion, and only sporadically sprayed for pests.

71.  Aqua Vista's failure to perform repairs in a reasonable manner were the direct and proximate cause of Ms. Carson's injuries, which include personal property loss, physical injuries, and mental anguish and suffering.

### Count 2 – Negligence Per Se Against I'm Frieda's Boss and TM Associates - 24 CFR § 5.703

72. Plaintiff incorporates each paragraph as if alleged herein.

73.  HUD enacted 24 C.F.R. § 5.703 to protect the health and safety of residents living in HUD funded housing by creating minimal standards to ensure the physical condition of HUD housing is "decent, safe, sanitary, and in good repair."

74.  Included in the health and safety concerns are the duties that HUD housing is free from mold, "infestation by rats, mice, or other vermin," as well as, air quality, HVAC, and sanitary system hazards to health and safety.

75.  Ms. Carson, as a tenant in HUD subsidized housing, is within the class of persons this regulation was enacted to protect.

76.  Aqua Vista violated its statutory duty to keep Unit 666A "decent, safe, sanitary, and in good repair" by willfully refusing and failing to keep Unit 666A free from visible mold, pests, and water intrusion.

77.  Aqua Vista's failure to keep Unit 666A free from mold, pests, and water intrusion are the direct and proximate cause of injuries suffered by Ms. Carson, including physical injuries, mental anguish and suffering, and personal property losses, all of which are injuries the regulation is intended to prevent.


**Count 3 – Negligence Per Se Against I'm Frieda's Boss  – Virginia Uniform Statewide Building Code**

78.  Section 36-98 of the Virginia Code empowers the Board of Housing and Community Development to promulgate a Uniform Statewide Building Code.  The Virginia Uniform Statewide Building Code, which includes the Virginia Maintenance Code, is a statutory framework designed to protect the health, safety and welfare of residents of the Commonwealth

of Virginia.  Virginia Uniform Statewide Building Code, Part III, Virginia Maintenance Code § 102.1 (2015 edition, effective September 4, 2018).

79.  The Virginia Maintenance Code adopts and incorporates Chapters 2 - 8 of the 2015 International Property Maintenance Code, published by the International Code Council, Inc., as an enforceable part of the Virginia Maintenance Code.  Virginia Uniform Statewide Building Code, Part III, Virginia Maintenance Code § 101.2 (2015 edition, effective September 4, 2018).

80.  I'm Frieda's Boss is an owner as defined by the Virginia Maintenance Code, and Ms. Carson and her children who reside in Unit 666A pursuant to a residential lease are occupants and are within the class of persons whose health and safety is protected by the building code.

81.  I'm Frieda's Boss has breached the duties prescribed by Virginia Maintenance Code §§ 302.2 (to maintain premises in such a manner to protect the foundation walls or slab of the structure from the accumulation and drainage of surface or stagnant water in accordance with the applicable building codes); 304.1 (to maintain the exterior of a structure shall be maintained in good repair, and in a structurally sound, and sanitary manner so as not to pose a threat to the health, safety, or welfare); 305.1 (to maintain the interior of a structure and equipment in good repair, structurally sound, and in a sanitary condition); 309.1 (to keep the unit free from insect and rodent infestation and to take proper precautions to prevent reinfestation); and 504.1 (to maintain plumbing systems in accordance with the applicable building code).

82.  The breach of the property maintenance duties required by the Virginia Maintenance Code by I'm Frieda's Boss proximately caused Ms. Carson's injuries, and these are injuries that the Maintenance Code was enacted to prevent.  I'm Frieda's Boss is therefore liable for all harms caused, including physical injuries, mental anguish and suffering, and personal property losses.

**Count 4 - Damages and Injunctive Relief Against I'm Frieda's Boss and TM Associates for**

**Violations of the Virginia Residential Landlord Tenant Act (VRLTA) pursuant to Va.**

**Code Ann. § 55.1-1259**

83. Plaintiff incorporates each paragraph as if alleged herein.

84. Section 55.1-1259 of the Virginia Code applies to any "person responsible for an act or omission" that violates the Virginia Residential Landlord Tenant Act. Accordingly, both I'm Frieda's Boss and TM Associates are "persons" liable for VRLTA violations.

85. Aqua Vista violated the VRLTA when it failed to:

    a. prevent the accumulation of moisture and the growth of mold;

    b. remediate visible mold in accordance with professional standards;

    c. maintain electrical, plumbing, sanitary, and ventilating systems, as well as appliances in good safe and working order; and,

    d. address and eliminate the sources of continued water intrusion;

    e. make all repairs necessary to keep the unit fit and habitable.

86. Ms. Carson and her children have been adversely affected by Aqua Vista's failure to comply with the VRLTA because they suffered physical injuries, mental anguish and suffering, personal property losses, and have been forced to relocate temporarily because of the unbearable state of the apartment.

87. Ms. Carson requests that the Court enter an injunction requiring Aqua Vista to do the following:

    a. remediate mold in accordance with professional standards;

    b. repair Unit 666A as to prevent future water intrusion;

    c. repair Unit 666A as to eliminate and prevent the presence of pests; and

d.      relocate Ms. Carson and her children until the mold, water intrusion, and pests have been

remediated in accordance with professional standards.

## Count 5 - Breach of Contract Against I'm Frieda's Boss

88.  Plaintiff incorporates each paragraph as if alleged herein.

89.  Aqua Vista agreed to maintain all equipment and appliances in safe and working order, make

necessary repairs with reasonable promptness, and provide extermination services as necessary

pursuant to its subsidized lease agreement with Ms. Carson. See Plaintiff's Exhibit 29.

90.  Aqua Vista breached the aforementioned obligations under the subsidized lease agreement

because it did not repair the water intrusion, did not remediate mold in accordance with

professional standards, did not repair leaks, and did not eliminate the pest infestation in Unit

666A.

91.  Aqua Vista's failure to meet its maintenance obligations under the subsidized lease agreement

caused Ms. Carson physical injuries, mental anguish and suffering, personal property losses, and

forced her to relocate temporarily.

## Count 6 - Virginia Consumer Protection Act (VCPA) Against I'm Frieda's Boss

92.  Plaintiff incorporates each paragraph as if alleged herein.

93.  On or before February 1, 2019, Aqua Vista, via the Office Manager and Assistant Office

Manager knowingly and intentionally misrepresented the following to Ms. Carson:

a.      Unit 666A was free from pests;

b.      Unit 666A was free from water intrusion; and

c.      Unit 666A was free from mold.

94.  Pled in the alternative, Aqua Vista deliberately concealed water intrusion, a pest infestation, and

mold in Unit 666A from Ms. Carson to induce her to lease Unit 666A for her and her children.

95.  Ms. Carson relied on the misrepresentations and/or omissions when she entered into the lease agreement on or about February 1, 2019.

96.  Unit 666A was not free from pests, water intrusion, or mold during Ms. Carson's lease.

97.  Aqua Vista's misrepresentations caused Ms. Carson to suffer physical injuries, mental anguish and suffering, personal property losses, and displacement from her home.

98.  Because Aqua Vista willfully made the aforementioned misrepresentations, the Court should award attorney's fees and treble damages.

## Count 7 – Fraud Against I'm Frieda's Boss

99.  Prior to February 1, 2019, Aqua Vista knew that Unit 666A contained mold, a pest infestation, and water intrusion that endangered the health and safety of its occupants from reports from prior tenants and notice violations from the City of Newport News Department of Codes Compliance.

100.  Despite this knowledge, Aqua Vista deliberately failed to disclose that Unit 666A contained mold, pests, and water intrusion to Ms. Carson at the time she signed the lease agreement.

101.  Mold, pest, and water intrusion are material facts that go to the health and safety of occupying a rental unit, and Aqua Vista knew Ms. Carson was concerned about her living conditions at the time she sought a new apartment.

102.  Aqua Vista deliberately failed to disclose the mold, pests, and water intrusion in Unit 666A to induce Ms. Carson into leasing Unit 666A, which she did.

103.  Ms. Carson's actual damages are a direct result of Aqua Vista's concealments include physical injuries, personal property losses, mental anguish and suffering, and displacement from her home.

WHEREFORE, Plaintiff Gabrielle Carson respectfully requests this Court:

1.   Issue a preliminary injunction requiring I'm Frieda's Boss to temporarily relocate Ms. Carson and her children while repairs are made in Unit 666A and all conditions affecting the habitability and safety of the unit are addressed;

2.   Issue an injunction requiring I'm Frieda's Boss and TM Associates to remediate mold in accordance with professional standards; repair Unit 666A as to prevent future water intrusion; and repair and treat Unit 666A so as to eliminate and prevent the presence of pests; and

3.   Require that I'm Frieda's Boss specifically perform its obligations under the subsidized lease, in particular, to repair the water intrusion, remediate mold in accordance with professional standards, repair leaks, and eliminate the pest infestation in Unit 666A ;

4.   Award compensatory damages to Ms. Carson;

5.   Award punitive and statutory damages to Ms. Carson;

6.   Award interests, costs of suit, and reasonable attorneys' fees;

7.   Grant other relief as this Court may deem just and proper.

Dated: September 17, 2020

Respectfully submitted,

By: */s/ Frank J. White*

Frank J. White Jr. (VSB #91168)
Legal Aid Society of Eastern Virginia
30 West Queens Way
Hampton, VA 23669
Phone: 757-275-0080
Fax: 757-275-0087
Email: FrankW@laseva.org
Counsel for Plaintiff

Melissa B. Bonfiglio (VSB#90016)
Legal Aid Society of Eastern Virginia
30 W. Queens Way
Hampton, VA 23669
Phone: 757-275-0080
Fax: 757-275-0087
Email: MelissaB@laseva.org
Counsel for Plaintiff